UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **LONNIE HUTCHERSON (#B-43963),** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | No. 10 C 6215 |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| **ALFANITA MOORE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, an Illinois state prisoner, brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that Alfanita Moore ("Moore"), a certified medical technician at the Cook County Jail ("Jail"), violated his constitutional rights by acting with deliberate indifference to his serious medical needs. Specifically, Plaintiff alleges that he received inadequate care from Moore for a fungal infection commonly known as jock itch. This matter is before the Court for ruling on Moore's motion for summary judgment and Plaintiff's cross-motion for summary judgment. For the reasons stated in this order, the Defendant's motion [67] is granted, and Plaintiff's motion [78] is denied.

**Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether factual issues exist, the Court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Weber v. Univ. Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). The Court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009).

Federal Rule of Civil Procedure 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Sarver v. Experian Info. Solutions*, 390 F.3d 969, 970 (7th Cir. 2004) (citations omitted).

**Local Rule 56.1**

Together with her motion for summary judgment, Moore served on Plaintiff a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by Local Rule 56.2. (Dkt. # 70.) The notice explained in detail the requirements of the Local Rules governing summary judgment.

Local Rule 56.1(b) requires a party opposing a motion for summary judgment to file:

> (3) a concise response to the movant's statement that shall contain:
>
> > (A) numbered paragraphs, each corresponding to and stating a concise summary of the paragraph to which it is directed, and
> > (B) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
> > (C) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon....

L.R. 56.1(b)(3) (N.D. Ill.)

Instead of filing a response to Moore's motion for summary judgment, Plaintiff filed a cross-motion as well as a memorandum and declaration in support of his motion. Although Plaintiff filed a statement of facts in support of his cross-motion for summary judgment, he did not file a separate response to Moore's statements of fact. Moreover, Moore filed a statement of additional facts in response to Plaintiff's cross-motion for summary judgment, but Plaintiff again failed to properly respond despite being given additional time to do so. (Dkt. # 88.) Specifically, instead of setting forth Moore's statements of additional facts and providing a response to each paragraph, Plaintiff merely details in narrative form the reasons he believes Moore's motion should be denied.

The Court may rigorously enforce compliance with Local Rule 56.1. *See, e.g., Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings."). Although *pro se* plaintiffs are granted some leniency in how their filings are construed, compliance with procedural rules is required. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006). "[A] district court is entitled to decide the motion based on the factual record outlined in the Local Rule 56.1 statements." *Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004) (citations and internal punctuation omitted).

Despite Plaintiff's failure to respond to Moore's statements of fact as provided by the rules, the Court has attempted to take notice of the facts as asserted by Plaintiff to the extent they are not properly disputed by Moore and Plaintiff could testify about the matters asserted based on his personal knowledge. Fed. R. Evid. 602.

**Facts**

Plaintiff[1] arrived at the Jail on September 25, 2009 from Stateville Correctional Center. (Def.'s 56.1(a)(3) Stmt., Dkt. # 69, ¶ 2.) At the time of his arrival, he had had jock itch[2] for approximately three days and had been prescribed anti-fungal cream at Stateville, which he was not permitted to take with him to the Jail. (*Id*. ¶ 7; Pl.'s 56.1(a)(3) Stmt., Dkt. 80, ¶ 8.) At the Jail, Plaintiff was examined by Physician's Assistant Shannon Rosine of Cermak Health Services, who prescribed anti-fungal cream (Micoriazote) for his jock itch, which was to be administered twice daily until October 9, 2009. (Def.'s 56.1(a)(3) Stmt., Dkt. # 69, ¶¶ 8, 9).

On October 6, 2009, Plaintiff went to the dispensary to address his ongoing jock itch symptoms. (*Id*. ¶ 11). The first time Plaintiff went to the dispensary, Moore refused to see him. (Pl.'s 56.1(a)(3) Stmt., Dkt. # 80, ¶ 11). However, when he returned to the dispensary a second time, Moore saw him. (*Id.*) During their interaction, Plaintiff told Moore that he intended to discontinue applying the anti-fungal medication because it was not working. (Def.'s 56.1(a)(3) Stmt., Dkt. # 69, ¶ 12). Plaintiff states that he told Moore that the medication was ineffective and the directions on the tube stated that it should not be used beyond a two-week period. (Pl.'s 56.1(a)(3) Stmt., Dkt. # 80, ¶ 12). Plaintiff asserts that during his visit to the dispensary, Moore acted unprofessionally and treated him as if he were a nuisance. (Pl.'s Decl., Dkt. # 79, ¶¶ 4, 10.) Moore does not remember treating or examining Plaintiff. (Def.'s 56.1(a)(3) Stmt., Dkt. # 69, ¶ 13.) Plaintiff states that Moore did not examine him. (Pl.'s 56.1(a)(3) Stmt., Dkt. # 80, ¶ 13.) According to Plaintiff, Moore stated that it was her practice to have a male member of the medical staff conduct such an examination, but she did not refer him for one. (*Id*.) The record does not indicate that Plaintiff was examined by any male medical personnel on October 6, 2009. Moore gave Plaintiff two additional tubes of the previously-prescribed anti-fungal medication. (*Id*. ¶ 12.) Altering Plaintiff's medication is outside the scope of Moore's duties as a certified medical technician and she has no authority to change the course of treatment determined by a medical practitioner. (Def.'s 56.1(a)(3) Stmt., Dkt. # 69, ¶ 13.)

Plaintiff discontinued application of the medication from October 6, 2009, to November 3, 2009. (Def.'s 56.1(a)(3) Stmt., Dkt. # 69, ¶ 14; Pl.'s Rule 56.1(a)(3) Stmt., Dkt. # 80, ¶ 14.)

---

[1] Plaintiff apparently also went by the name Harold Campbell; thus, some supporting documents referenced in the record refer to Harold Campbell rather than Lonnie Hutcherson.

[2] "Jock itch (tinea cruris) is a fungal infection that affects the skin of your genitals, inner thighs and buttocks. Jock itch causes an itchy, red, often ring-shaped rash in these warm, moist areas of your body." http://www.mayoclinic.com/health/jock-itch/DS00490.

Plaintiff filed a health services request form on October 7, 2009 and was seen by medical personnel at the Jail on October 10, 2009, but was not provided any alternative treatment or medication for his jock itch. (Def.'s 56.1(a)(3) Stmt., Dkt. # 69, ¶¶ 15, 16). Plaintiff does not recall whether he was seen on October 10, 2009. (Def.'s Ex. B, Hutcherson Dep., at 83:6-8.)

On November 3, 2009, Plaintiff was examined by Dr. Yu who determined that Plaintiff had normal vital signs, including a normal body temperature, and diagnosed a fungal infection known as jock itch. (Def.'s 56.1(a)(3) Stmt, Dkt. # 69, ¶ 17; Def.'s Ex. I, Yu Aff., ¶¶ 6(a), (b).) Dr. Yu prescribed a different anti-fungal medication (Tinactin) and an oral anti-fungal medication (Diflucan). (Def.'s 56.1(a)(3) Stmt, Dkt. # 69, ¶ 17; Def.'s Ex. I, Yu Aff., ¶ 6(c).) On November 7, 2009, Plaintiff was examined by Dr. Bonaparte, who determined that Plaintiff had developed a secondary bacterial infection at the site of the original fungal infection. (Def.'s 56.1(a)(3) Stmt., Dkt. # 69, ¶ 21.) According to Dr. Bonaparte's affidavit, on November 7, 2009, Plaintiff presented with normal vital signs, including a normal body temperature, and had a fungal infection known as jock itch with a mild secondary skin infection. (Def.'s Ex. M, Bonaparte Aff., ¶¶ 6(a), (b), 7.) She further attested that Plaintiff had "mild symptoms consistent with jock itch, including redness, dryness, itching, mild swelling of the area and mild self-inflicted scratches." (*Id*. ¶ 6(c).) Dr. Bonaparte prescribed Plaintiff a different topical anti-fungal cream (Clotrimazole), a daily dose of an antibiotic (Augmentin), and an anti-irritation medication (Benadryl). (Def.'s 56.1(a)(3) Stmt., Dkt. # 69, ¶ 22.)

After Plaintiff's examination by Dr. Bonaparte on November 7, 2009, Plaintiff continued to seek and receive medical attention for his skin ailments, being seen by doctors, Plaintiff estimates, between three and seven times through February of 2010. (Def.'s 56.1(a)(3) Stmt., Dkt. # 69, ¶ 26.) Plaintiff testified that he filed a health services request on April 5, 2010, in which he stated that he a "bad rash in his groining hairs," a doctor had given him triaminiclone acetonide ointment USP, which was working, and he needed a refill. (Def.'s Ex. B, Hutcherson Dep., at 126:12-127:11.) After at least one additional visit to health services at the Jail and continued application of the topical treatment through June or July 2010, Plaintiff's jock itch was gone. (Def.'s Ex. B, Hutcherson Dep., at 131:9-132:13, 138:3-139:10.)

**Analysis**

Correctional officials and health care providers may not act with deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Fields v. Smith*, 653 F.3d 550, 554 (7th Cir. 2011). Deliberate indifference has both an objective and a subjective element: the inmate must have an objectively serious medical condition, and the defendant must be subjectively aware of and consciously disregard the inmate's medical need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Estelle*, 429 U.S. at 103-04; *see also Roe v. Elyea*, 631 F.3d 843, 862 (7th Cir. 2011). In the case at bar, the Plaintiff has not satisfied either prong required for liability.

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would know that a doctor's attention

4

was needed. *See Foelker v. Outagamie Cnty.*, 394 F.3d 510, 512-13 (7th Cir. 2005); *Edwards v. Snyder*, 478 F.3d 827, 830-831 (7th Cir. 2007). A condition is also objectively serious if "failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008) (citing *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)).

Seventh Circuit cases "'demonstrate a broad range of medical conditions may be sufficient to meet the objective prong of a deliberate indifference claim, including a dislocated finger, a hernia, arthritis, heartburn and vomiting, a broken wrist, and minor burns sustained from lying in vomit.'" *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) (quoting *Roe,* 631 F.3d at 861). However, "a prison's medical staff that refuses to dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue--the sorts of ailments for which many people who are not in prison do not seek medical attention--does not by its refusal violate the Constitution." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 829 (7th Cir. 2009) (citations omitted). For example, the Seventh Circuit affirmed dismissal of a medical deliberate indifference claim relating to a spider bite, noting that the injury "does not compare to those that this court has found would be obvious to a layperson." *Jellis v. Hulick*, 422 Fed. App'x 548, 550 (7th Cir. 2011).

Three district courts that have directly addressed the question have found that jock itch is not a serious medical condition. *See Harrod v. Baumgardner*, No. DKC–08–3299, 2009 WL 2151857, at *13 (D. Md. July 14, 2009); *Walker v. Vaughn*, No. 07-896-GPM, 2008 WL 2704742, at *7 (S.D. Ill. July 8, 2008) ("This [genital rash] could be annoying and even uncomfortable but hardly serious, let alone life threatening."); *Espinoza v. Freeman*, No.3:95–CV–727RP, 1996 WL 478721, at *6 (N.D. Ind. Aug. 2, 1996).

Similarly, courts in this circuit have held that athlete's foot, and other related skin rashes, are not a medical condition of the gravity contemplated by *Estelle* and its progeny.[3] For example, another court in this district recently held that "[a]lthough uncomfortable, a foot fungus, or athlete's foot, is not a serious medical need or injury." *Walker v. Dart*, No. 09 C 1752, 2010 WL 669448, at *4 (N.D. Ill. Feb. 19, 2010). *See also Smith v. Schwartz*, No. 10 C 0721, 2011 WL 2115831, at *3 (S.D. Ill. May 26, 2011) (plaintiff's allegations that he suffered "chronic itching, athlete's foot, chafing, peeling skin, and a painful, infected rash on his buttocks" did not amount to a serious medical condition) (collecting cases); *Cox v. Hartshorn*, 503 F. Supp. 2d 1078, 1085 (C.D. Ill. 2007) (fungal rash is not so serious that it is life threatening or poses a risk of needless pain or lingering disability); *Rogers v. Allen Cnty. Jail*, No. 06 C 0139, 2006 WL 1441092, at *2 (N.D. Ind. May 25, 2006) (colds and fungal infections are inconvenient and uncomfortable, but common among non-incarcerated citizens and do not constitute serious medical needs).

---

[3] According to the Mayo Clinic's website, jock itch is caused by the same fungus that causes athlete's foot. *See* http://www.mayoclinic.com/health/jock-itch/DS00490 /DSECTION=causes (last visited Aug. 26, 2013)).

5

Courts in other circuits have likewise rejected fungal skin conditions as objectively serious. *See, e.g., Tsakonas v. Cicchi*, 308 Fed. App'x 628, 632 (3rd Cir. 2009) (medical problems including weight loss, eczema of the feet, seborrhea of the scalp, athlete's foot, constipation, and swollen knuckles were not "serious" because they were not life-threatening and the plaintiff never complained of suffering long-term effects from any delay in treatment); *Thompson v. Carlsen*, No. 08 CV 0965, 2010 WL 3584409 at *11 (N.D.N.Y. Aug.16, 2010) ("dry and cracked skin, and athlete's foot . . . are not 'serious' medical problems under Eighth Amendment standards"), *report & rec. adopted*, 2010 WL 3584396 (N.D.N.Y. Sep. 7, 2010); *Patterson v. Kim*, No. 08 CV 0873, 2009 WL 2982753, at *8 (W.D. Mich. Sep. 14, 2009) (ingrown toenail and fungal infection on the feet were not conditions serious enough to support the objective component of an Eighth Amendment claim); *Russell v. Ohio Adult Parole Auth.*, No. 06 CV 0873, 2007 WL 129000, at *4 (S.D. Ohio Jan. 12, 2007) (same); *Calhoun v. Thomas*, 360 F. Supp. 2d 1264, 1287 (M.D. Ala. 2005) (pubic lice, athlete's foot, and bleeding feet were not objectively serious medical conditions); *Swindell v. Supple*, 02 CV 3182, 2005 WL 267725 at *7 (S.D.N.Y. Feb. 3, 2005) (excessive itching, scratching, soreness from scratching, and cracked skin not medical conditions of "such an urgent and substantially painful nature as would satisfy the objective prong of the deliberate indifference standard").

The Court agrees that Plaintiff's jock itch does not constitute an objectively serious medical need under the deliberate indifference analysis. While the condition clearly caused Plaintiff discomfort and some pain, the evidence does not establish that it was life threatening or caused any long-term disability or detriment.

Even assuming Plaintiff's jock itch was a serious medical condition, Moore's treatment was not deliberately indifferent. When Plaintiff told Moore that he had an ongoing jock itch problem, Moore provided him with two more tubes of antifungal cream. Both Drs. Yu and Bonaparte attest that Moore's instructions to Plaintiff to continue using the cream was medically reasonable and did not deviate from the professional standard of care. (Def.'s Ex. I, Yu Aff., ¶ 9; Def.'s Ex. M., Bonaparte Aff., ¶ 8.) Plaintiff does not rebut this testimony with any record evidence. Further, it is undisputed that Moore was not authorized, as a certified medical technician, to change Plaintiff's prescription. While Dr. Bonaparte concluded that Plaintiff had also developed a mild secondary skin infection approximately one month later, Plaintiff admitted that he had not used the antifungal cream provided by Moore. Plaintiff cannot complain that Moore's treatment was deliberately indifferent because his condition did not improve and indeed, worsened, when he failed to use the antifungal cream Moore gave him.

Moreover, Plaintiff's assertion that he disagreed with the course of treatment directed by Moore because the antifungal cream says it was not to be used for more than fourteen days does not establish deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010) ("Neither medical malpractice nor mere disagreement with a doctor's medical judgment" amounts to deliberate indifference). Both Drs. Yu and Bonaparte attest that Plaintiff's decision to discontinue the antifungal cream that was prescribed to him on September 25, 2009 and not complete the full two-week period of treatment ending on October 9, 2013 "likely contributed" to the continued presence of the jock itch. (Def.'s Ex. I, Yu Aff., ¶ 10; Def.'s Ex. M, Bonaparte

Aff., ¶ 9.)

After seeing Moore, Plaintiff saw medical personnel again regarding his fungal infection on October 10, 2009. The record is silent as to the treatment that he received on that day, but also does not indicate that he had any secondary infection. Nor does the record indicate that Dr. Yu found Plaintiff to be suffering from a secondary infection on November 3, 2009. It was not until November 7, 2009, a full month after his visit with Moore, that he was diagnosed with a mild secondary infection in addition to his jock itch. Nothing in the record supports Plaintiff's contention that he had an infection that was sufficiently serious to implicate the Eighth Amendment when he was treated by Moore or that her actions were deliberately indifferent.

**Conclusion**

For the foregoing reasons, Moore's motion for summary judgment [67] is granted and Plaintiff's cross-motion [78] is denied. The clerk is directed to enter final judgment in favor of Moore. Civil case terminated.

If Plaintiff wishes to appeal this final order, he may file a notice of appeal with this Court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Ill. Dept. of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, Plaintiff may also be assessed a "strike" under 28 U.S.C. § 1915(g). Plaintiff is warned that, pursuant to that statute, if a prisoner has had a total of three federal cases or appeals dismissed as frivolous, malicious, or failing to state a claim, he may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury. *Id.*

.

**Date**: September 13, 2013

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
**RONALD A. GUZMAN**
**United States District Judge**